UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CATHY PASCALE       :
                    :
    v.              :   CASE NO. 3:09-cv-08(CFD)
                    :
SERGEANT LEPORE, ET AL.  :

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Cathy Pascale ("Pascale") is an inmate currently confined at the York Correctional Institution in Niantic, Connecticut. She brings this civil rights action *pro se* pursuant to 28 U.S.C. § 1915 and 42 U.S.C. § 1983 against defendants Detective Sergeant Marc Lepore and Police Officers Gregg Scully and Stephen Jaeger of the Norwalk Police Department. The defendants are sued only in their individual capacities. Pascale contends that the defendants falsely arrested her on drug possession charges and used excessive force against her. Pending is defendants' motion for summary judgment. For the reasons that follow, the motion is granted.

**I.     STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

A court must grant summary judgment if the pleadings, discovery materials on file and any affidavits show that there is no genuine issue as to any material fact. *See Miner v. Glen Falls*, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert "the existence of some unspecified disputed material facts" or present "mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citations omitted). The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. *See Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and "draw[s] all permissible factual inferences in favor of the" nonmoving party. *Patterson v. County of Oneida, NY*, 375 F.3d 206, 219 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) (citations omitted).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation,

however, an unsupported assertion cannot overcome a properly supported motion for summary judgment. See *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. FACTS[1]

Pascale is a convicted felon with a long history of arrests and convictions on narcotics charges. On February 27, 2008, Pascale lived at 11 West End Road, Norwalk, Connecticut. On that date, Pascale's landlord, Angela Duncan (who lived in another part of the residence at the same address), called the Norwalk Police Department to report that Pascale had been robbed at gunpoint.

At some point after 11:00 p.m. that day, Officer Gregg Scully, other officers of the Norwalk Police Department, and a trained K-9 police dog arrived at Pascale's residence in response to the alleged robbery. The police dog remained in the police vehicle. Officer Scully spoke to Pascale in an effort to obtain details of the robbery and information about any contact the alleged suspect may have had with Pascale's apartment so that the police dog might be able to track the suspect.

---

[1] The facts are taken from defendants' Local Rule 56(a)1 Statement along with the attached exhibits and affidavits. (*See* Doc. No. 14-2.) Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. *See* D. Conn. L. Civ. R. 56(a)2 & 56(a)3. On April 27, 2010, defendants filed a Notice to Pro Se Litigant [Doc. No. 23] informing plaintiff of her obligation to respond to the motion for summary judgment, the time limit for filing his response, and of the contents of a proper response.
  Plaintiff has failed to file a Local Rule 56(a)2 Statement in opposition to the motion for summary judgment. Accordingly, defendant's facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

Officer Scully was aware that Pascale had a history of drug use and drug sales. Officer Scully asked Pascale if there were any narcotics in her apartment because they could interfere with the dog's ability to track the suspect. Pascale admitted that she had marijuana in her apartment. Officer Scully then asked Pascale if she had any heroin in the apartment and explained that if the police dog were to locate any heroin, he might also accidentally ingest it. Pascale then went to her closet and pulled a soda can out of her jacket. The can contained eighteen bags of heroin.

Officer Jaeger arrived at the scene and tested the substance found in the bags inside the soda can. The substance tested positive for heroin. Officer Scully arrested Pascale on state charges of possession of narcotics, possession of narcotics with intent to sell, possession of narcotics within 1500 feet of a school and possession of narcotics with intent to sell within 1500 feet of a school. At the time of her arrest, Pascale appeared to be intoxicated or under the influence of alcohol or narcotics. Because multiple persons had been in and out of Pascale's apartment, Officer Scully did not bring the dog in to attempt to find the scent of the alleged suspect who had robbed Pascale.

Officer Jaeger transported Pascale to the Norwalk Police Station. Officer Hubert Smith then began to process Pascale at the station and completed the Detainee Intake Form. He noted on the form that Pascale was incoherent, high on heroin and suffered from diabetes. Officer Smith did not record any signs of trauma, assault, bruises or other markings to Pascale or complaints of injuries.

After processing, another officer placed Pascale in a holding cell. Officer Smith checked on Pascale in her cell at 11:33 p.m. on February 27, 2008 and at 12:17 a.m.,

12:40 a.m., 1:11 a.m., 1:20 a.m. and 1:55 a.m. on February 28, 2008. At 2:12 a.m. on February 28, 2008, Officer Smith noticed that Pascale had fallen off of her bunk and had hit her head. He immediately notified Sergeant Marc Lepore of the Norwalk Police Department. Sergeant Lepore determined that Pascale was conscious, but required medical treatment.

Norwalk ambulance personnel transported plaintiff to Norwalk Hospital at 3:16 a.m. She was admitted to Norwalk Hospital at 3:35 a.m. and examined. The examining physician determined that she had suffered a head injury. She was treated and released with orders to return to the hospital if her conditioned worsened. Officers Gonez and Cote transported Pascale back to the Norwalk Police Department at about 6:16 a.m. and put her in a cell. Pascale never indicated to Officer Smith that she had been beaten or subjected to excessive force by the officers who arrested her on February 27, 2008.

At 9:00 a.m. on February 28, 2008, plaintiff was transported to court. Pascale was arraigned on the state charges and the court assigned her case docket number S20N-CR-08-0118509-S. Pascale was subsequently released on bond and she returned to her residence.

On April 22, 2008, Norwalk Police Officers re-arrested Pascale on multiple narcotics charges stemming from purchases of narcotics made by undercover Norwalk Police officers from Pascale on five separate dates in February, March and April 2008. Pascale was charged in five separate criminal actions pursuant to her arrest on April

22, 2008.[2] Those five criminal actions were consolidated with the criminal action stemming from Pascale's arrest on February 27, 2008, and all six actions were disposed of pursuant to a plea and sentencing agreement on July 15, 2008 in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk at Norwalk. Pascale pled guilty to a number of the criminal charges and received a sentence of eight years imprisonment. The remaining charges were nolled as part of the plea agreement.

## III. Discussion

Defendants raise three arguments in support of their motion for summary judgment: (1) the false arrest claim is precluded because the underlying charges were not terminated in Pascale's favor; (2) Officers Lepore and Jaeger were not involved in the arrest of Pascale; and (3) Pascale fails to state a claim of excessive force. Pascale has filed a memorandum in opposition to the motion for summary judgment in which she states that she disagrees with the defendants' version of the facts.

### A. False Arrest Claim

The Fourth Amendment's protections include the right to be free from arrests without probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Claims for false arrest or malicious prosecution, brought under [Section] 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution

---

[2] Those cases were assigned the following Docket Numbers: S20N-CR-08-080118908-S, S20N-CR-08-080118909-S, S20N-CR-08-080118910-S, S20N-CR-08-080118911-S, S20N-CR-08-080118912-S.

under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Under Section 1983, the elements of claims for false arrest and malicious prosecution are controlled by state law. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004); *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994).

Under both Connecticut law and under Section 1983, a plaintiff must demonstrate that the prosecution terminated in his favor to state a claim of malicious prosecution or false arrest. *See Roesch v. Otarola*, 980 F.2d 850, 853-54 (2d Cir. 1992) (holding that under Connecticut law, a false arrest plaintiff must show that the charges terminated favorably); *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 171 (D. Conn. 2003) ("It is well settled in the Second Circuit that in order to prevail on a cause of action for false arrest or malicious prosecution, a plaintiff must prove that the underlying criminal proceeding terminated in his favor."). A plaintiff may satisfy this element by showing "that he 'was discharged without a trial under circumstances amounting to the abandonment of the prosecution without request by him or arrangement with him.'" *White v. Wortz*, 66 F. Supp. 2d 331, 334 (D. Conn. 1999) (quoting *See v. Gosselin*, 133 Conn. 158, 160, 48 A.2d 560 (1946)).

Pascale declares in her complaint that the charges arising from her arrest on February 27, 2008 were terminated in her favor because they were nolled. Defendants argue that the charges were nolled as part of a plea bargain.

"A nolle prosequi ... can constitute a favorable termination, so long as the plaintiff demonstrates that it was entered under circumstances indicating that the State has abandoned the prosecution without request by the plaintiff or arrangement with him." *Frey v. Maloney*, 476 F. Supp. 2d 141, 148 (D. Conn. 2007). <u>See also</u> *Holman v.*

*Cascio*, 390 F.Supp.2d 120 (D.Conn. 2005).  A review of the transcript of the plea hearing, provided by the defendants, reveals that the hearing was held to address six criminal actions pending against Pascale, including the case stemming from Pascale's arrest on the night of February 27, 2008.  (*See* Def.'s Local Rule 56(a)(1) Statement, Ex. 7, Transcript of Plea Hearing at 1.)  After Pascale pleaded guilty to various charges in three of the six cases and the judge sentenced Pascale to a total effective sentence of eight years imprisonment followed by ten years of special parole, the court noted that nolles would enter as to all other open criminal counts pending against Pascale.  (*See id.* at 16.)  The transcript clearly reflects that the charges stemming from Pascale's arrest on February 27, 2008 were nolled in exchange for Pascale's guilty plea to other charges.  Thus, the prosecution of this charge was not abandoned without "arrangement with" Pascale.  *White*, 66 F. Supp. 2d at 334.

The court concludes that the prosecution in *State of Connecticut v. Pascale*, Docket No. S20N-CR-08-0118509-S on the charges stemming from Pascale's arrest on February 27, 2008 did not terminate in Pascale's favor.  Thus, as a matter of law, Pascale cannot prevail on her false arrest claim.  Defendants' motion for summary judgment is granted on this ground.

### B. Excessive Force Claim

Pascale contends that the defendants hit her in the head with a night stick or a flashlight during the ride from her residence to the Norwalk Police Station.  She states that she lost all memory of the night that she was arrested and that she now suffers from headaches and short term memory loss.  The defendants argue that there is no evidence that force was used against Pascale.  Rather, she hit her head when she fell

8

off the bunk in her cell at the Norwalk Police Station.

The Fourth Amendment protects individuals from the use of excessive force by a police officer during an arrest. *See* U.S. Const. amend. IV (stating that people shall "be secure in their persons ... against unreasonable ... seizures"); *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment"). The test for determining excessive force requires the court to balance the extent of the force used "against the countervailing government interests at stake." *Id.* at 396.

Plaintiff merely surmises that the defendants must have hit her in the head with a flashlight or night stick when they transported her to the police station because she had a bruise on her head running down her cheek when she was released on bond the day after she was arrested. After Officer Scully placed Pascale under arrest, Officer Jaeger transported Pascale to the police station. Defendant Scully has filed an affidavit in which he states that neither he nor any other officers used force in effectuating the arrest of Pascale or in transporting Pascale to the Norwalk Police Station.

Officer Smith has filed an affidavit indicating that he was present at the police station when Pascale arrived with Officers Jaeger and Scully and that he completed an intake form indicating that she was not suffering from an signs of physical assault, bruises or other injuries. Officer Smith stated that Pascale fell off of the bunk in her cell at about 2:12 a.m. and hit her head. Officer Smith reported this information to Sergeant LePore, who determined that Pascale would need medical treatment. Officers transported Pascale to Norwalk Hospital where she was treated for her head injury. At

no time did Pascale report to Officer Smith that she had been assaulted or subjected to excessive force by the arresting officers. At all times, Pascale indicated to Officer Smith that she had sustained the injuries to her head when she fell off her bed in the holding cell.

Attached to Pascale's memorandum in opposition to the motion for summary judgment are photographs allegedly depicting Pascale, and statements of Pascale's landlord, Angela Duncan, and another individual named Matthew White, which were given to an investigator in the Division of Public Defender Services Office in Norwalk, Connecticut. The witness statements are not sworn or made under penalty of perjury. Thus, they do not constitute affidavits or declarations made pursuant to 28 U.S.C. § 1746.[3] Even if the witness statements were admissible, nothing in the statements creates a factual dispute as to the alleged use of excessive force by defendants. Both witnesses claim that they saw three or four police officers leaning over Pascale in an intimidating manner when they questioned her in her residence and that when she returned from the police department after she had been released on bond, she had a bruise over her eye and a welt on her head. Thus, neither witness observed how Pascale suffered the injury to her head. Nor did they observe any defendant use excessive force against Pascale.

---

[3] Although the witness statement of Mathew White includes a sentence at the bottom of the page indicating that the "statement is true to the best of my knowledge" it does not include any language indicating that it was made under penalty of perjury. *See* Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 2; 28 U.S.C. § 1746 (allowing unsworn declarations made under penalty of perjury to substitute for sworn affidavits); *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir.1999) (unsworn declarations that included language regarding statements having been made under penalty of perjury substantially conformed to requirements of § 1746 and were admissible in opposition to motion for summary judgment).

Pascale asserts that the photographs attached to her memorandum allegedly show her after she was released on bond. The photographs show a woman with a bruise above her right eye and a bruise around her right eye. Defendants object to these photographs because they have not been authenticated and would not be admissible at trial. Even if the court were to assume that they were admissible, Pascale concedes that they were taken after she was released on bond. Thus, the photographs do not constitute evidence that defendants used excessive force against Pascale during the ride from her residence to the police station on February 27, 2008 and do not create an issue of fact as to how she sustained her head injury.

Pascale admits that she has no recollection of the events surrounding her arrest and the injury to her head. Furthermore, she has submitted no independent evidence that the injury to her head was due to the use of force by defendants. Pascale cannot defeat defendants' summary judgment motion "on the basis of conjecture or surmise or merely upon a metaphysical doubt concerning the facts." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (internal quotation marks and citations omitted). Pascale has presented no evidence to permit a rational trier of fact to find that defendants used excessive force against her during the ride from her residence to the police station. Accordingly, the court concludes that there is no genuine issues of material fact as to whether the defendants used excessive force against Pascale and the claim of excessive force fails as a matter of law. The motion for summary judgment is granted as to the excessive force claim.

## IV. CONCLUSION

Defendant' Motion for Summary Judgment [**Dkt. #14**] is **GRANTED** The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

Dated this 16th day of August, 2010, at Hartford, Connecticut.

/s/ Christopher F. Droney
Christopher F. Droney
United States District Judge